UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW JAMES MCGONIGLE and
JOSHUA HESTER, individually and on
behalf of all similarly situated,

                         Plaintiffs,

v.

UNITED WHOLESALE MORTGAGE, LLC,

                         Defendant.

Case No. 25-cv-13865
Hon. Susan K. DeClercq
Mag. Kimberly G. Altman

**ORAL ARGUMENT
REQUESTED**

---

**DEFENDANT UNITED WHOLESALE MORTGAGE, LLC'S MOTION TO
DISMISS AND STRIKE CLASS ALLEGATIONS**

Defendant United Wholesale Mortgage, LLC ("UWM"), by and through its undersigned counsel, moves for dismissal with prejudice of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, to strike the class allegations pursuant to Fed. R. Civ. P. 12(f) or Fed. R. Civ. P. 23(d)(1)(D).

In support of this Motion, UWM relies on the arguments set forth in the attached brief in support. Plaintiffs' Complaint, which attempts to assert claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and its implementing regulations (Counts I and III) and the Virginia Telephone Privacy Protection Act, Va. Code Ann. §§ 59.1-510 *et seq.* ("VTPPA") (Count II), should be dismissed because it fails to offer any facts plausibly suggesting that UWM placed

the calls or sent the text messages at issue in the Complaint. The messages referenced in the Complaint indicate on their face that they were sent by a UWM "partner." Fairly read, the Complaint suggests that someone other than a UWM employee— like a loan officer at an independent mortgage brokerage—placed the calls and sent the text messages at issue. UWM's public SEC filings, which can be considered by the Court in connection with this Motion, confirm that UWM operates solely as a wholesale mortgage lender, avoiding conflict with the independent mortgage brokers and their direct relationship with borrowers. This makes the conclusory and unsupported allegations in the Complaint that "Defendant" placed the calls implausible. This warrants dismissal of Plaintiffs' claims based on UWM's direct liability under either statute.

The Complaint does not even attempt—because it cannot—plead any facts that would give rise to vicarious liability of UWM over the acts of independent third parties in placing the calls or sending the text messages. In the absence of such facts, UWM cannot be vicariously liable for acts of independent third parties.

In addition, Plaintiffs propose overbroad and impermissibly fail-safe classes with insurmountable superiority, predominance, and ascertainability problems— requiring mini-trials on issues of consent and agency. Because no amount of discovery can cure these defects, the Court should strike class allegations under Rules 12(f) and 23(d)(1)(D).

On January 9, 2026, UWM sought concurrence in the relief requested in a live call, but such concurrence was denied.

WHEREFORE, UWM requests this Honorable Court issue an Order:

A.     Dismissing the Complaint in its entirety with prejudice;

B.     Striking class allegations in the Complaint; and

C.     Awarding attorneys' fees, costs, and all other relief to which UWM is entitled.

Dated: January 16, 2026                           Respectfully submitted,

                                                  FOLEY & LARDNER LLP

                                                  By:  */s/ Irina Kashcheyeva*
                                                  Irina Kashcheyeva (P72575)
                                                  Amir El-Aswad (P86092)
                                                  500 Woodward Avenue, Suite 2700
                                                  Detroit, Michigan 48226
                                                  (313) 234-7100
                                                  (313) 234-2800
                                                  ikashcheyeva@foley.com
                                                  ael-aswad@foley.com
                                                  *Counsel for Defendant United*
                                                  *Wholesale Mortgage, LLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW JAMES MCGONIGLE and
JOSHUA HESTER, individually and on
behalf of all similarly situated,

Case No. 25-cv-13865
Hon. Susan K. DeClercq
Mag. Kimberly G. Altman

                Plaintiffs,

**ORAL ARGUMENT
REQUESTED**

v.

UNITED WHOLESALE MORTGAGE, LLC,

                Defendant.

---

**BRIEF IN SUPPORT OF DEFENDANT UNITED WHOLESALE
MORTGAGE, LLC'S MOTION TO DISMISS AND STRIKE CLASS
ALLEGATIONS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF ISSUES PRESENTED.............................................. vii

I.     INTRODUCTION ............................................................................1

II.    FACTUAL BACKGROUND............................................................3

III.   STANDARD OF REVIEW...............................................................6

IV.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM. ......................7

       A.    The Complaint Fails to State a Claim of Direct Liability
            Against UWM. ...................................................................10

            1.    The Complaint Does Not, And Cannot, Plausibly Allege
                 That UWM Physically Sent Text Messages to Either
                 Plaintiff...................................................................10

            2.    UWM Operates Exclusively Through Broker Partners,
                 Refuting Any Inference That UWM Initiated The Calls. .........13

       B.    The Complaint Fails to Allege Any Facts to Suggest Vicarious
            Liability. ............................................................................14

V.    THE COURT SHOULD STRIKE CLASS ALLEGATIONS. .....................18

VI.   CONCLUSION.............................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................6, 13

*Bank v. Spark Energy, LLC*,
   860 F. App'x 205 (2d Cir. 2021)...............................................13

*Barnes v. Coca-Cola Co.*,
   No. 1:22-CV-01511, 2025 WL 1027431 (E.D. Cal. Apr. 7, 2025)....................20

*Beck v. Cuyahoga Cnty.*,
   2022 WL 4363562 (N.D. Ohio Sept. 16, 2022) ...................................23

*Bovee v. Coopers & Lybrand C.P.A.*,
   272 F.3d 356 (6th Cir. 2001) ...................................................11

*Boyer v. Diversified Consultants, Inc.*,
   306 F.R.D. 536 (E.D. Mich. 2015)..........................................7, 22

*Brainard v. Am. Skandia Life Assurance Corp.*,
   432 F.3d 655 (6th Cir. 2005) ..................................................17

*Bryant v. Byron Udell & Assocs. Inc.*,
   No. 123CV00414AJTLRV, 2023 WL 5180351 (E.D. Va. Aug. 11, 2023). passim

*Bryant v. King's Creek Plantation, L.L.C.*,
   No. 20-CV-00061, 2020 WL 6876292 (E.D. Va. June 22, 2020) ......................22

*Buonomo v. Optumum Outcomes, Inc.*,
   301 F.R.D. 292 (N.D. Ill. 2014) ..............................................7

*Cacho v. McCarthy & Kelly LLP*,
   739 F. Supp. 3d 195 (S.D.N.Y. 2024)........................................9, 18

*Carmouche v. A1 Diabetes & Med. Supply, Inc.*,
   586 F. Supp. 3d 795 (W.D. Tenn. 2022)..........................................22

*Cunningham v. Foresters Fin. Servs., Inc.*,
   300 F. Supp. 3d 1004 (N.D. Ind. 2018) ...................................................................13

*D'Ambrosio v. Marino*,
   747 F.3d 378 (6th Cir. 2014) ...................................................................................6

*Davis v. City of Detroit*,
   No. 15-10547, 2018 WL 4179316 (E.D. Mich. Aug. 31, 2018) ........................24

*Davis v. Mut. Life Ins. Co. of New York*,
   6 F.3d 367 (6th Cir. 1993) .....................................................................................17

*Dobronski v. Anthony J. Russo, Jr., PA*,
   No. 2:23-CV-12288, 2024 WL 4363118 (E.D. Mich. Sept. 30, 2024)8, 10, 11, 14

*Dobronski v. Tobias & Assocs., Inc.*,
   769 F. Supp. 3d 681 (E.D. Mich. 2025) ..................................................... 9, 14, 17

*Faulhaber v. Petzl Am., Inc.*,
   656 F. Supp. 3d 1257 (D. Colo. 2023) ....................................................................20

*Gavitt v. Born*,
   835 F.3d 623 (6th Cir. 2016) ...................................................................................6

*Gen. Telephone Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982) ..............................................................................................19

*Herrera v. Serv. Emps. Int'l Union Loc. 87*,
   No. CV 10-01888 RS, 2012 WL 13059697 (N.D. Cal. Apr. 10, 2012)..............20

*Hicks v. Alarm.com Inc*.,
   No. 20-cv-532, 2020 WL 9261758 (E.D. Va. Aug. 6, 2020).................... 9, 10, 13

*Hirsch v. USHealth Advisors, LLC*,
   337 F.R.D. 118 (N.D. Tex. 2020)............................................................................25

*Hodgin v. UTC Fire & Sec. Americas Corp.*,
   885 F.3d 243 (4th Cir. 2018) ................................................................................18

*In re Joint Pet. Filed by Dish Network, LLC, et al.*,
    28 F.C.C. Rcd. 6574 (May 9, 2013) ........................................................ 7, 8, 9, 12

*Jackson v. Caribbean Cruise Line, Inc.*,
    88 F. Supp. 3d 129 (E.D.N.Y. 2015) ................................................................15

*Johansen v. HomeAdvisor, Inc.*,
    218 F. Supp. 3d 577 (S.D. Ohio 2016) .............................................................18

*Jones v. Federated Fin. Reserve Corp.*,
    144 F.3d 961 (6th Cir. 1998) ...........................................................................17

*Keating v. Peterson's Nelnet, LLC*,
    615 F. App'x 365 (6th Cir. 2015) ............................................................ passim

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
    No. 12–CV–221, 2013 WL 275568 (E.D. Mo. Jan.24, 2013) ...........................21

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ..........................................................................................9

*Melito v. Am. Eagle Outfitters, Inc.*,
    No. 14-CV-02440, 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) .....................16

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ...........................................................................21

*O'Flynn v. PHH Mortg. Corp.*,
    No. 1:22-CV-00335-JMS-MG, 2024 WL 4553116 (S.D. Ind. Oct. 23, 2024)....20

*Oom v. Michaels Cos.*,
    2017 WL 3048540 (W.D. Mich. July 19, 2017) ................................................23

*Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*,
    783 F.3d 1045 (6th Cir. 2015) ...........................................................................7

*Pilgrim v. Universal Health Card., LLC*,
    660 F.3d 943 (6th Cir. 2011) ........................................................................6, 19

*Randleman v. Fid. Nat. Title Ins. Co.*,
   646 F.3d 347 (6th Cir. 2011) ................................................................21

*Reo v. Caribbean Cruise Line, Inc.*,
   No. 14 CV 1374, 2016 WL 1109042 (N.D. Ohio Mar. 18, 2016) .....................16

*Roehrman v. McAfee, LLC*,
   758 F. Supp. 3d 889 (S.D. Ind. 2024) .................................................18

*Sandoval v. Ali*,
   34 F. Supp. 3d 1031 (N.D. Cal. 2014)...................................................20

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
   863 F.3d 460 (6th Cir. 2017) ......................................................... 24, 25

*Sauter v. CVS Pharmacy*,
   No. 2:13-cv-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014) .........................21

*Schwamberger v. Marion Cnty. Bd. of,*
   *Elec.*, 988 F.3d 851 (6th Cir. 2021) ......................................................3

*Scruggs v. CHW Grp., Inc.*,
   No. 20CV48, 2020 WL 9348208 (E.D. Va. Nov. 12, 2020)..............................12

*Selou v. Integrity Sol. Servs. Inc.*,
   No. 15-10927, 2016 WL 612756 (E.D. Mich. Feb. 16, 2016) ..........................15

*Simmons v. Charter Commc'ns, Inc.*,
   222 F. Supp. 3d 121 (D. Conn. 2016) ...................................................8

*Smith v. Direct Bldg. Supplies, LLC*,
   No. 20-3583, 2021 WL 4623275 (E.D. Pa. Oct. 7, 2021)...................................10

*Tarrify Props., LLC v. Cuyahoga Cnty.*,
   37 F.4th 1101 (6th Cir. 2022)......................................................... 24, 25

*Taylor v. Cnty. of Oakland*,
   2024 WL 188376 (E.D. Mich. Jan. 16, 2024)...........................................25

*Usanovic v. Americana, L.L.C.*,
  775 F. Supp. 3d 1133 (D. Nev. 2025) ....................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..............................................................................19

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ........................................................ 21, 23

## Statutes

47 U.S.C. § 227 ............................................................................................1, 8
Va. Code Ann. § 59.1-510 .............................................................................1
Va. Code Ann. § 59.1-514 .............................................................................9

## Rules

Fed. R. Civ. P. 12 ..........................................................................................6
Fed. R. Civ. P. 23 ........................................................................... 7, 19, 24
Fed. R. Evid. 201 ........................................................................................11

## Regulations

47 C.F.R. § 64.1200(c)...............................................................................4, 7
47 C.F.R. § 64.1200(d) ..............................................................................5, 7
47 C.F.R. § 64.1200(f) ...............................................................................9, 12

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.  Whether the Court should dismiss Plaintiffs' Complaint premised on UWM's direct liability under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Virginia Telephone Privacy Protection Act, Va. Code Ann. §§ 59.1-510 *et seq.* ("VTPPA") where Plaintiffs do not offer any facts to suggest that the entity that placed the offending calls or sent the offending text messages was UWM, where the messages themselves indicate that they were sent by a UWM "partner"—i.e., likely an employee at the independent third-party broker—and where UWM's business model, documented in official SEC filings, is to offer loan products through independent brokers, without engaging in direct consumer outreach.

    Defendant's Answer:                     Yes.

2.  Whether the Court should dismiss Plaintiffs' Complaint to the extent it attempts to state a claim of vicarious liability under the TCPA and the VTPPA where: (a) the Complaint does not even mention agency or vicarious liability; (b) the Complaint does not allege facts to suggest formal agency or actual authority between UWM and the callers; (c) Plaintiffs fail to offer any facts indicating that UWM authorized the callers' outreach to Plaintiffs; and (d) Plaintiffs fail to allege facts indicating that UWM knew of or benefited from the alleged calls, so as to support UWM's ratification of the calls or texts.

    Defendant's Answer:                     Yes.

3.  Whether the Court should strike class allegations in the Complaint where: (a) the proposed classes are overly broad and not coextensive with Plaintiffs' own direct liability theory; (b) each proposed class is an impermissible fail-safe class whose membership depends on a determination that the person has a valid claim based on the notions of consent and agency; and (c) determining class membership would require individualized, merits-based inquiries into each alleged call or text and each caller's relationship with Defendant, such that the classes on their face fail to meet requirements of predominance, superiority, and ascertainability requirements.

    Defendant's Answer:                     Yes.

## I.   <u>INTRODUCTION</u>

Plaintiffs Andrew James McGonigle and Joshua Hester bring this putative class action purporting to assert claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Virginia Telephone Privacy Protection Act, Va. Code Ann. §§ 59.1-510 *et seq.* ("VTPPA") against United Wholesale Mortgage, LLC ("UWM"). The Complaint includes a conclusory assertion that UWM "delivered, or cause[d] to be delivered, advertisement or marketing text messages" to Plaintiffs. (Compl. ¶¶ 23, 29, 32, 58, 93.) But Plaintiffs fail to offer any ***facts*** plausibly suggesting it was ***UWM*** that sent the text messages or placed the phone calls at issue. Quite to the contrary:

- Plaintiffs concede that the messages did not identify the sender's name or the entity responsible for sending the texts, and the calls came from "various spoofed numbers" (Compl. ¶¶ 26, 47);
- Plaintiffs produce "examples of the text messages received by Plaintiff," which identify the sender as "Nick from UWM ***Partner***." (*Id*. ¶ 25, emphasis added.) ***On its face, this attribution suggests that UWM itself was not the sender***;
- Plaintiffs reference live conversations with a caller named "Nikolai," whose connection to UWM is unexplained. (Compl. ¶¶ 51-52.) Notably, the Complaint does ***not***—and cannot—allege that Nikolai is a UWM employee or agent.
- Plaintiffs do not (and cannot) explain why they believe that the two numbers from which the offending communications originated belong to UWM.

The case of direct liability against UWM is particularly implausible in light of UWM's well-documented business model, whereby UWM is a wholesale mortgage lender that does not offer its mortgage products directly to consumers and

does not engage in direct-to-consumer marketing. When considered in the context of UWM's business model, the allegations in the Complaint do not, and cannot, state a claim of direct liability against UWM.

Nor do Plaintiffs offer any facts that would support a claim of vicarious liability against UWM under any of the three vicarious liability theories: actual authority, apparent authority, or ratification. Without such facts, UWM cannot be held liable for calls made or texts sent by independent third parties. These are not mere minor pleading deficiencies; they are case-dispositive failures that cannot be remedied through amendment.[1]

At a minimum, Plaintiffs' class allegations should be stricken under Rules 12(f) or 23(d)(1)(D). Plaintiffs' proposed class definitions are overbroad and sweep in individuals far beyond the scope of Plaintiffs' claims. Plaintiffs' proposed classes are also impermissibly fail-safe, ensuring that putative members either prevail or are excluded—a structure that warrants class allegations to be stricken at the pleadings stage. And it is apparent from the face of the Complaint that the proposed classes would require mini-trials about each member's consent, revocation, and caller's relationship to UWM. Thus, the proposed class allegations fail to meet predominance, superiority and ascertainability requirements.

---

[1] Although not relevant to the Court's decision as to the Motion, as part of the meet-and-confer, UWM provided Plaintiffs' counsel with an affidavit attesting to the fact that UWM did not place or authorize the calls and text messages at issue.

2

## II.   **FACTUAL BACKGROUND**[2]

*Plaintiff McGonigle.* With respect to Plaintiff Andrew McGonigle, the Complaint alleges that between August 12 and August 22, 2025, he received seven unsolicited marketing text messages—six from phone number (248) 780-8661 and one from phone number (248) 988-9183—apparently intended for someone else. (Compl. ¶¶ 23-30.) These text messages did not identify "the legal name of the entity responsible for sending the text or provide[] a valid physical address." (Compl. ¶ 26.)

The Complaint includes screenshots of three texts, all marked as spam. Two are sent by "Nick from UWM *Partner*"—suggesting that the messages were not sent by UWM itself (Compl. ¶¶ 24-26). The third text does not identify the sender but references UWM's general website (www.uwm.com) and asks the recipient about his current interest rates (Compl. ¶ 28.) The Complaint curiously does not include the other messages and does not explain why Plaintiffs believe that the originating phone numbers belong to UWM. The Complaint simply concludes that these calls were delivered or caused to be delivered by "Defendant." (Compl. ¶¶ 29, 36, 37.)

*Plaintiff Hester.* Plaintiff Joshua Hester alleges that he received "numerous calls from Defendant," prompting him to send "Defendant" a letter requesting no

---

[2] For purposes of this Motion to Dismiss, Plaintiffs' non-conclusory allegations are accepted as true. *Schwamberger v. Marion Cnty. Bd. of Elec.*, 988 F.3d 851, 856 (6th Cir. 2021). That said, UWM expressly disputes Plaintiffs' allegations and is confident that, if the case is allowed to proceed, future discovery will confirm that Plaintiffs' allegations of direct or vicarious liability are without merit.

further contact. (*Id.* ¶ 45). The Complaint does not say to whom or to what address he sent the letter, or when and how the letter was sent. Mr. Hester alleges that, despite this letter, he received at least seven additional "automatically dialed calls from Defendant" between October 3 and October 13, 2025, all promoting mortgage loan products. (*Id.* ¶¶ 46-48). The Complaint acknowledges that the calls came from "various spoofed telephone numbers." (*Id.* ¶ 46). The Complaint does not specify how much time has passed between his alleged letter and the renewed calls.

The Complaint goes on to allege that Mr. Hester spoke with an individual named "Nikolai" twice, first on October 6, 2025, and again on October 8, 2025, asking not to be called again to no avail. (*Id.* ¶¶ 50-55.) The Complaint alleges that the calls Mr. Hester received were made by "Defendant," without explaining the basis for this conclusory assertion. (*Id.* ¶¶ 45-46, 48, 53, 55.) Despite Plaintiff apparently having spoken to Nikolai live on at least four occasions (*id.* ¶¶ 49, 51, 52, 54), the Complaint notably says nothing about who "Nikolai" is, whether it is the same person as "Nick from UWM Partner," and what his relationship with UWM is.

***Plaintiffs' Claims and Class Allegations.*** The Complaint asserts three claims: (1) claim under the TCPA Do-Not-Call ("DNC") regulations, *see* 47 C.F.R. § 64.1200(c), alleging that UWM solicited individuals who registered their numbers in the DNC Registry; (2) claim under the VTPPA, alleging that UWM solicited Virginia residents without prior express permission; and (3) claim under the TCPA

4

internal DNC regulations, *see* 47 C.F.R. § 64.1200(d), alleging that UWM solicited individuals after failing to honor their opt-out requests, failing to maintain appropriate policies and procedures, and failing to train personnel engaged in telemarketing.

Plaintiff McGonigle purports to bring this putative class action on behalf of the following facially overbroad nationwide class and Virginia subclass:

> **National Do Not Call Registry Class**: All persons throughout the United States (1) who did not provide their telephone number to Defendant, (2) to whom Defendant delivered, or caused to be delivered, more than one voice message or text message within a 12-month period, promoting Defendant's goods or services, (3) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Defendant delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period, (4) within four years preceding the date of this complaint and through the date of class certification. (Compl. ¶ 58.)

> **VTPPA Sub-Class**: All persons residing in the Commonwealth of Virginia (1) whose telephone numbers are or were assigned Virginia area codes, (2) who did not provide their telephone number to Defendant (3) to whom Defendant delivered or caused to be delivered one or more unsolicited text messages promoting its goods or services, (4) where the person's telephone number had been registered on the National Do Not Call Registry for at least thirty (30) days before the text message was delivered, and (5) within four years preceding the filing of this Complaint. (*Id*. ¶ 58.)

Plaintiff Hester also seeks to bring his claims on behalf of the following proposed class of individuals who received calls from "or on behalf of" UWM:

> **Internal Do Not Call Class**: All persons within the United States who, (1) within the four years prior to the filing of this lawsuit through the date of class certification, (2) who received more than one telemarketing call from or on behalf of Defendant promoting Defendant's goods or services to said person's residential telephone

number (3) within a 12-month period, (4) including at least one call after communicating to Defendant that they did not wish to receive such calls. (*Id.*)

## III. <u>STANDARD OF REVIEW.</u>

***Motion to Dismiss.*** To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must allege facts that raise a "plausible inference" that the defendant inflicted a legally cognizable harm upon the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. The Court "need not accept as true legal conclusions or unwarranted factual inferences…." *D'Ambrosio v. Marino,* 747 F.3d 378, 383 (6th Cir. 2014). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility of entitlement to relief.'" *Gavitt v. Born*, 835 F.3d 623 (6th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 662). Accordingly, a court should not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

***Motion to Strike.*** Under Rule 12(f), the Court may "strike from a pleading an insufficient defense or any . . . impertinent . . . matter." The Court may strike class allegations before discovery where the complaint demonstrates that a class action cannot be maintained on the facts alleged therein. *Pilgrim v. Universal Health Card., LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming district court's judgment striking

class allegations and dismissing lawsuit). "The function of the motion [to strike] is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with them early in the case." *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.,* 783 F.3d 1045, 1050 (6th Cir. 2015).

Fed. R. Civ. P. 23(d)(1)(D) also permits the Court to issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 537 (E.D. Mich. 2015). "Although most often it will not be practicable for the court to do that at the pleading stage, sometimes the complaint will make it clear that class certification is inappropriate." *Buonomo v. Optumum Outcomes, Inc*., 301 F.R.D. 292, 295 (N.D. Ill. 2014).

## IV.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM.

To establish a violation of the DNC Registry restrictions in §§ 64.1200(c)(2) and (d), Plaintiffs must plausibly allege that UWM "initiate[d]" the calls.[3] Although the term "initiate" is undefined in the statute, the FCC has interpreted it to mean to "take[] the steps necessary to physically place a telephone call." *In re Joint Pet. Filed by Dish Network, LLC et al.,* 28 F.C.C. Rcd. 6574, 6583 (May 9, 2013) ("2013 FCC Ruling"). As the FCC explained, an entity does not initiate a telephone call—and

---

[3] 47 C.F.R. § 64.1200(c)(2) (prohibiting "initiat[ing]" particular telephone outreach); 47 C.F.R. § 64.1200(d) (same).

therefore cannot be directly liable under the statute—if it "might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* As an example, the FCC noted that "the mere fact that a company produces and sells a product does not mean that it initiates telephone calls that may be made by resellers retailing that product." *Id.* at *6583, ¶ 25. Instead, the word "initiate" suggests "a far more direct connection between a person or entity and the making of a call." *Id.* This Court, like many others, has relied on this FCC Ruling in emphasizing that a defendant can be directly liable for TCPA violations only if it actually places the call. *Dobronski v. Anthony J. Russo, Jr., PA*, No. 2:23-CV-12288, 2024 WL 4363118, at *4 (E.D. Mich. Sept. 30, 2024) (DeClercq, J.); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015) (no direct liability where defendant did not send the offending text).[4]

"Direct liability, however, is not the sole basis for recovery of damages under the TCPA." *Keating*, 615 F. App'x at 371. Section 227(c)(5) allows relief for violations of various DNC rules if a person received an offending call "***by or on behalf of*** the same entity in violation of the regulations." 47 U.S.C. § 227(c)(5) (emphasis added). Even though a party may not have directly "initiated" an offending call, it may still be held vicariously liable for the calls placed on its behalf.

---

[4] *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 132 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017); *Bryant v. Byron Udell & Assocs. Inc.*, No. 123CV00414AJTLRV, 2023 WL 5180351, *5 (E.D. Va. Aug. 11, 2023).

*Keating*, 615 F. App'x at 371–72 (citing 2013 FCC Ruling, at *6592).[5] But vicarious liability under the TCPA rests on federal common law agency principles of actual authority, apparent authority, or ratification.[6] *Keating*, 615 F. App'x at 371; *Dobronski v. Tobias & Assocs., Inc.*, 769 F. Supp. 3d 681, 698-99 (E.D. Mich. 2025).

Likewise, to state a claim under the VTPPA, a telephone solicitor must "initiate, or cause to be initiated, a telephone solicitation call." Va. Code Ann. § 59.1-514(A). Courts have interpreted the VTPAA to include similar principles of direct and vicarious liability as the TCPA.[7]

---

[5] In this regard, the FCC distinguishes between "telemarketers" who initiate the calls and "sellers" on whose behalf the calls are made. *Compare* 47 C.F.R. § 64.1200(f)(9) (defining "telemarketers" as entities that "***initiate[]*** a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services") (emphasis added), *with* 47 C.F.R. § 64.1200(f)(7) (defining a "seller" as "the person or entity ***on whose behalf*** a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services") (emphasis added). A "seller does not necessarily initiate a call that is placed by a third-party telemarketer on the seller's behalf" but it may nevertheless be held vicariously liable for certain third-party telemarketing calls." 2013 FCC Ruling, at *6584, ¶ 27.

[6] Though *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ended judicial deference to FCC interpretations, post-*Loper* decisions have overwhelmingly found the FCC's direct/vicarious liability framework sound based on the "by on or behalf of" language in 47 U.S.C. § 227(c)(5). *See, e.g., Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 213 (S.D.N.Y. 2024) (collecting cases).

[7] *Bryant*, 2023 WL 5180351, *5-6 (the "same requirements" for establishing direct and vicarious liability claims "apply to the VTPPA"); *Hicks v. Alarm.com Inc.*, No. 20-cv-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) ("there are no facts detailing [defendant's] involvement in ***placing*** any calls," and therefore a "parallel" VTTPA claim failed for the same reasons) (emphasis in original).

**A.** **The Complaint Fails to State a Claim of Direct Liability Against UWM.**

The only theory of liability articulated in the Complaint is direct liability. To plead direct liability under the TCPA, a plaintiff must "support his conclusion or belief" that the defendant placed the calls. *Smith v. Direct Bldg. Supplies, LLC*, No. 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (TCPA complaint dismissed for failing to allege that defendant initiated the calls or explain how plaintiff knew defendant placed them.).[8] The Complaint fails to offer non-conclusory facts that establish that UWM physically initiated the offending texts and calls.

**1.** **The Complaint Does Not, And Cannot, Plausibly Allege That UWM Physically Sent Text Messages to Either Plaintiff.**

The Complaint lacks sufficient factual detail to support an inference that UWM itself sent the text messages or placed the calls at issue. The Complaint acknowledges that texts to Plaintiff McGonigle "did not identify the legal name of the entity responsible for sending [them]." (Compl. ¶ 26.) McGonigle identifies two telephone numbers from which the text messages were sent (*id.* ¶ 23), but notably does not (and cannot) allege that these numbers belong to UWM. With respect to Plaintiff Hester, the Complaint likewise does not identify the originating phone numbers or their ownership, acknowledging that the calls "came from various

---

[8] *See also Hicks*, 2020 WL 9261758, at *5 (dismissing TCPA claim where allegation that defendant placed offending calls was conclusory and unsupported by detail); *Keating*, 615 F. App'x at 371 (same); *Dobronski*, 2024 WL 4363118, at *4 (same); *Bryant*, 2023 WL 5180351, *5 (same).

spoofed telephone numbers." (Compl. ¶ 46.) And even though Plaintiff Hester claims to have spoken with "Nikolai" live on *at least four occasions* (Compl. ¶¶ 49-55), the Complaint notably does not allege that Nikolai worked for UWM.

The Complaint not only lacks facts supporting an inference that UWM placed the calls, but includes facts that affirmatively rebut it. Two of the cited text messages state they were sent by "Nick *from UWM Partner*," not UWM. (*Id.* ¶ 25, emphasis added.) UWM's 2024 10-K Annual Report, of which the Court may take judicial notice at this stage,[9] explains that UWM uses the word "partners" to refer to "Independent Mortgage Brokers," who maintain "direct relationship[s] with borrowers." UWM 2024 Annual Report (Feb. 26, 2025) (Exhibit 1, p. 4). Regardless of UWM's 10-K, a company that introduces itself as a UWM "*partner*" is, by definition, not UWM itself. The allegations that a UWM "*Partner*" sent the text messages plausibly suggest that the messages were sent by a loan officer at a brokerage and refute any inference that UWM itself sent the messages.[10]

Though the texts reference UWM—and the third text to Plaintiff McGonigle

---

[9] *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001); Fed. R. Evid. 201(b), (c).

[10] Although the Complaint is not entirely clear on this point, it appears that the "Nikolai" who spoke with Plaintiff Hester is the same person as "Nick from UWM Partner" who texted Plaintiff McGonigle. If true, this fact would also undermine any suggestion that Nikolai was employed by UWM, so as to support a claim of direct liability against UWM. *Dobronski*, 2024 WL 4363118, at *4 (a defendant can be directly liable for TCPA violations only if it actually places the call); *Bryant*, 2023 WL 5180351, *5 (same).

references UWM's generic website (Compl. ¶ 28)—such references may, at most, support an inference that UWM is a "seller" on whose behalf the call was made rather than "telemarketer" who initiated the call. Unlike telemarketers, who initiate the call and may be directly liable, *see* 47 C.F.R. § 64.1200(f)(9), sellers are entities "on whose behalf a telephone call or message is initiated" and subject to potential vicarious liability, *see* 47 C.F.R. § 64.1200(f)(7). As the FCC explained, "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain." FCC 2013 Ruling, at *6583, ¶ 26. The Complaint, at most, suggests that the calls or texts promoted UWM's loan products—not that UWM itself took the steps necessary to physically place them.

Despite the Complaint attributing the text messages to a separate third party, the Complaint formulaically alleges that "Defendant" "deliver[ed] or caus[ed] to be delivered" the messages to Plaintiffs. (*Id.* ¶¶ 2, 29, 36, 37, 58.) These "conclusory statements" cannot support direct liability claims under the TCPA or VTPPA as a matter of law. *Scruggs v. CHW Grp., Inc.*, No. 20CV48, 2020 WL 9348208, *6 (E.D. Va. Nov. 12, 2020) (dismissing TCPA and VTPPA claims despite conclusory allegations that defendant "made repeated telemarketing calls to [plaintiff's] residential phone" and "the caller identified himself as associated with [Defendant]

and attempted to sell [Plaintiff] a home warranty").[11] Lacking facts tying UWM to

initiating the communications—and with the texts explicitly sent by a UWM

"partner" rather than UWM itself—direct liability is implausible as a matter of law.

*Cunningham v. Foresters Fin. Servs., Inc.*, 300 F. Supp. 3d 1004, 1014 (N.D. Ind.

2018) (claim for direct liability under the TCPA fails because the complaint alleged

that other parties placed the offending calls); *Iqbal*, 556 U.S. at 678–79.

## 2. UWM Operates Exclusively Through Broker Partners, Refuting Any Inference That UWM Initiated The Calls.

The suggestion that UWM itself placed the calls and sent the text messages to

Plaintiffs is also at odds with UWM's business strategy. As UWM's most recent 10-

K Report explains, UWM markets its products exclusively to independent mortgage

broker partners, who in turn may market them directly to consumers:

> Our principal strategy that has driven our substantial growth over the past
> years, is our strategic decision to operate solely as a Wholesale Mortgage
> Lender—thereby avoiding conflict with our partners, the Independent
> Mortgage Brokers and their direct relationship with borrowers. Unlike
> "Retail Mortgage Lenders" that offer mortgage loans directly to individual
> borrowers and underwrite the mortgage loans, we do not work directly
> with the borrower during the mortgage loan financing process. We believe

---

[11] *See also Hicks*, 2020 WL 9261758 at *4-5 (dismissing TCPA and VTPPA claims despite allegations that when plaintiff called the number back, "the person who answer[ed] identifie[d] the company as [defendant]" because the Complaint contained no plausible facts "detailing [defendant's] involvement in **placing** any calls" beyond "nonconclusory factual allegations") (emphasis added); *Bank v. Spark Energy, LLC*, 860 F. App'x 205, 206 (2d Cir. 2021) (affirming dismissal of TCPA claim because, "[a]lthough [plaintiff] allege[d] that [defendant] initiated telephone calls" at issue, he failed to allege any detail about the calls, rendering the allegations impermissibly conclusory).

that by not competing for the borrower connection and relationship, we are able to generate significantly higher loyalty and satisfaction from our clients, the Independent Mortgage Brokers…. (Exhibit 1, p. 4.)

As the 10-K further explains, "[o]ur clients, the Independent Mortgage Brokers, have the initial communication with a potential borrower." (Exhibit 1, p. 6.) And "[a]s a Wholesale Mortgage Lender, [UWM] market[s] and originate[s] mortgage loans exclusively through independent third parties, comprised of Independent Mortgage Brokers." (Exhibit 1, p. 14.)

Conclusory allegations in the Complaint that "[a]ll of the calls were made by Defendant to promote their mortgage financing services" (Compl. ¶ 48) and that Defendant sent the texts "for its marketing campaign" (*id.* ¶ 23) are inconsistent with this undisputed business reality. Given that UWM only originates loans delivered by its brokers, who are separate and independent entities, UWM itself would not "actually, physically initiate[] the telephone call[s] at issue." *Bryant*, 2023 WL 5180351, *5; *Dobronski*, 2024 WL 4363118, at *4. This refutes the suggestion that UWM initiated the communications, such that it could be directly liable.

**B.   The Complaint Fails to Allege Any Facts to Suggest Vicarious Liability.**

Plaintiffs do not allege—and ultimately cannot establish—a claim for vicarious liability under the TCPA or VTPPA. To state a vicarious liability claim, Plaintiffs must allege that UWM "delegated actual or apparent authority to place those calls" or "ratified the act through acceptance of benefits." *Dobronski*, 769 F.

14

Supp. 3d at 698; *Keating*, 615 F. App'x 365 at 371-72. Here, the Complaint is devoid *of any facts satisfying these three agency principles.* The Complaint does not even reference the words "vicarious liability" or "agency." The closest Plaintiffs come to alleging vicarious liability is when they assert that the phone numbers used to contact Plaintiffs were "used or *caused to be used*" by Defendant "for its marketing campaign." (Compl. ¶ 23, emphasis added.) These allegations fall woefully short of plausibly alleging vicarious liability.[12]

*No Facts to Establish Actual Authority.* "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Keating*, 615 F. App'x at 373. Here, the Complaint fails to allege any facts suggesting that UWM authorized or otherwise manifested to the third-party broker that he could send the communications at issue. *See Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015) (vicarious liability fails where plaintiff simply alleged that defendant "is responsible for making or causing the making of the text message

---

[12] *See Selou v. Integrity Sol. Servs. Inc.*, No. 15-10927, 2016 WL 612756, at *5 (E.D. Mich. Feb. 16, 2016) (vicarious liability claim fails where the complaint did not plead any fact that allows the court to draw the reasonable inference that defendant is vicariously liable for the misconduct); *Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133, 1141-42 (D. Nev. 2025) (dismissing vicarious liability claim where plaintiff asserted defendant was "directing, apparently authorizing, ratifying, and/or negligently supervising their agents" without offering supporting facts).

calls," and another party made calls "on behalf of, and at the direction of" defendant). The Complaint does not identify the potential "vendor and what instructions may have been given to it." *Bryant*, 2023 WL 5180351, at *6 ("vicarious liability cannot attach without identifying this vendor and what instructions may have been given to it"). Even if the Complaint alleged that the callers were UWM's agents and placed the calls at UWM's direction (it does not), that would not be enough to establish actual authority.[13] An obvious plausible explanation for the calls and texts at issue is that independent mortgage brokers, acting on their own accord, contacted Plaintiffs to offer UWM mortgage products.

**No Facts to Establish Apparent Authority.** Apparent authority is "the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Keating*, 615 F. App'x 365 at 373. Under this theory, a principal will incur liability for the acts of an "agent" only if the principal "held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance

---

[13] *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440, 2015 WL 7736547, at *6-7 (S.D.N.Y. Nov. 30, 2015) (allegation that a third party "is [the defendant's] agent" insufficient to state a claim for vicarious liability under the TCPA); *Reo v. Caribbean Cruise Line, Inc.*, No. 14 CV 1374, 2016 WL 1109042, at *5 (N.D. Ohio Mar. 18, 2016) (vicarious liability claim dismissed where plaintiff alleged only that defendant hired third-party marketers who placed the calls).

16

upon the apparent authority." *Jones v. Federated Fin. Reserve Corp*., 144 F.3d 961, 965 (6th Cir. 1998). "The apparent power of an agent is to be determined by the ***act of the principal and not by the acts of the agent.***" *Brainard v. Am. Skandia Life Assurance Corp*., 432 F.3d 655, 663 (6th Cir. 2005) (emphasis added).

Here, Plaintiffs cannot establish apparent authority because their alleged belief that "Nick from UWM Partner" or "Nikolai" acted on behalf of UWM is not traceable to any manifestation by UWM. (Compl. ¶¶ 25, 51-52.) The Complaint offers no facts showing UWM held these individuals out as its agents or otherwise authorized the use of its name in direct-to-consumer marketing. Any purported connection is based solely on acts by unknown callers—conduct that, by law, cannot create apparent authority. *Brainard*, 432 F.3d at 663 ("a court's focus during an inquiry into the existence of apparent authority must be on the acts of the principal and whether those actions manifested a conveyance of authority to the agent").

**No Facts to Establish Ratification by UWM.** "Ratification occurs where the principal receives and retains the benefits of a transaction with ***full knowledge of all material facts***." *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 374 (6th Cir. 1993) (emphasis added). In other words, the principal must "knowingly accept[] the benefits of another's actions 'through conduct justifiable only on the assumption that the [principal] consents to be bound by the act's legal consequences.'" *Dobronski*, 769 F. Supp. 3d at 699. Critically, "a person may ratify an act only ***'if the actor acted***

17

*or purported to act as an agent on the person's behalf*.'" *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016) (emphasis added).

Here, as explained above, Plaintiffs have not plausibly alleged that the callers acted or purported to act as UWM's agents, rendering any potential ratification theory inapplicable. *Id.* Moreover, Plaintiffs have not alleged, nor could they, that UWM knew of the material facts surrounding at-issue communications. *See Cacho*, 739 F. Supp. 3d at 218 (dismissing TCPA claim and rejecting ratification theory upon observing that the "Complaint is bereft of any allegation from which one could reasonably infer that Defendant knew or should have known that the telemarketers were violating the TCPA"). Plaintiffs also do not, and cannot, allege that UWM accepted the benefits of these communications—for example, by originating a new loan with Plaintiffs.[14] Accordingly, the Complaint fails to state a claim of vicarious liability as a matter of law.

## V.     THE COURT SHOULD STRIKE CLASS ALLEGATIONS.

The Complaint also proposes to certify the following three classes: (a) National DNC Registry Class (McGonigle); (b) VTPPA Sub-Class (McGonigle);

---

[14] *Roehrman v. McAfee, LLC*, 758 F. Supp. 3d 889, 899-900 (S.D. Ind. 2024) (no ratification established because plaintiff "purchased no [defendant] product in response to the offending text messages"); *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 253-54 (4th Cir. 2018) (rejecting as "conjecture" argument that defendants "benefitted from the telemarketers' alleged TCPA violations" because the defendants "did not receive any direct proceeds from the telemarketers' sale of home-security products to consumers.").

and (c) Internal DNC Class (Hester). (Compl. ¶ 58.) Because it is apparent that, regardless of any discovery that may occur, none of the proposed classes can be certified, class allegations should be stricken. *See Pilgrim*, 660 F.3d at 949.

     ***Proposed Classes Are Overbroad.*** To the extent Plaintiffs seek to represent members proceeding under a vicarious liability theory, their proposed class definitions are fatally overbroad. As explained in Part IV.B *supra*, the Complaint does not even mention "vicarious liability," let alone attempt to establish any of the applicable agency factors. Yet Plaintiffs seek to represent members to whom Defendant "delivered, *or caused to be delivered*" the offending communication or who received the offending communication "from *or on behalf of* Defendant." (Compl. ¶ 58, emphasis added.) Plaintiffs, who themselves do not invoke and cannot establish vicarious liability, thus attempt to represent members seeking to hold UWM vicariously liable.

     A district court may strike class allegations before discovery when "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011); Fed. R. Civ. P 23(a)(2). Where the class definition is not coextensive with plaintiff's injury allegations, class

allegations should be stricken. *See Faulhaber v. Petzl Am., Inc.,* 656 F. Supp. 3d 1257, 1273 (D. Colo. 2023) (striking as overbroad class allegations because, as defined, they were not coextensive with plaintiff's injury allegations).

On the face of the Complaint, Plaintiffs do not "possess the same interest" and have not "suffer[ed] the same injury" as the persons they seek to represent. *See Herrera v. Serv. Emps. Int'l Union Loc. 87*, No. CV 10-01888 RS, 2012 WL 13059697, at *7 (N.D. Cal. Apr. 10, 2012) (plaintiffs failed to adduce evidence "that the entire class has incurred reasonably co-extensive claims that correspond with those of the named plaintiffs"). Because the proposed class definitions are demonstrably overbroad, the Court should strike vicarious liability allegations at the pleadings stage.[15]

***Proposed Classes Are Impermissibly Failsafe.*** Second, the proposed classes are impermissibly fail-safe because they are defined by reference to a legal conclusion regarding whether the text is sent or the call is placed by or on behalf of UWM and regarding the absence of consent. A "fail-safe" class is "one that is defined so that whether a person qualifies as a member depends on whether the

---

[15] *O'Flynn v. PHH Mortg. Corp.*, No. 1:22-CV-00335-JMS-MG, 2024 WL 4553116, at *12 (S.D. Ind. Oct. 23, 2024) (striking class allegations on the basis of overbreadth); *Barnes v. Coca-Cola Co.*, No. 1:22-CV-01511, 2025 WL 1027431, at *5 (E.D. Cal. Apr. 7, 2025) (class allegations stricken based on overbreadth of the proposed class definition); *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044 (N.D. Cal. 2014) (striking class allegations where "[a]s pled, the class is inconsistent with Plaintiffs' theory of the case").

person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). A fail-safe class "includes **only** those who are **entitled** to relief." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (emphasis in original). "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Id.* (quoting *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011)).

Here, membership in all three classes is defined by reference to consent. For example, membership in the Internal DNC Class is defined by reference to whether the member "communicat[ed] to Defendant that they did not wish to receive such calls." (Compl. ¶ 58.) Membership in the National DNC Registry Class and VTPPA Sub-Class is defined by reference to whether a member "did not provide their telephone number to Defendant." (*Id.*)

Courts have frequently found classes defined expressly by reference to consent to be failsafe.[16] But courts also have stricken as failsafe classes that are not defined expressly by reference to consent, but are "attempting to avoid the

---

[16] *See Sauter v. CVS Pharmacy*, No. 2:13-cv-846, 2014 WL 1814076, at *1 (S.D. Ohio May 7, 2014) (striking a class that consisted of members who "did not provide prior express consent" for the calls); *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 12–CV–221, 2013 WL 275568, at *3-4 (E.D. Mo. Jan.24, 2013) (striking class allegations where one of the class elements was that "Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes").

21

consequences of overtly defining … classes in terms of prior express consent by making consent an unspoken yet central implication of [plaintiffs'] classes." *Boyer*, 306 F.R.D. at 540 (striking as failsafe a class consisting of those persons "who did not provide his or her phone number to [defendant] or the creditor as an authorized contact number for the alleged debt").[17] Here, the Court would either have to find that a particular member did not provide her phone number to UWM/revoked her prior consent—thereby establishing UWM's liability on the merits and, at the same time, assuring member's inclusion into the class—or that a particular member did provide her phone number to UWM/did not revoke her prior consent—thereby both denying UWM's liability and excluding the member from the class. Such class is failsafe and should be stricken.

In addition, all three proposed classes depend on a legal conclusion regarding the Defendant having physically initiated the call or the existence of agency. To be included in the class, a member must have received communications for which UWM must be found directly or vicariously liable—or the member must be excluded. The National DNC Registry Class and the VTPPA Sub-Class both include

---

[17] *Carmouche v. A1 Diabetes & Med. Supply, Inc*., 586 F. Supp. 3d 795, 806 (W.D. Tenn. 2022) (striking as fail-safe a class that was "defined by consent, as it requires that the individual affirmatively informed [defendant] to stop calling them"); *Bryant v. King's Creek Plantation, L.L.C.*, No. 20-CV-00061, 2020 WL 6876292, at *3 (E.D. Va. June 22, 2020) (striking nearly identical National DNC Registry and VTPPA classes as impermissibly fail-safe).

persons "to whom ***Defendant delivered, or caused to be delivered***" one or more call or text message. (Compl. ¶ 58, emphasis added.) Similarly, the Internal DNC Class includes persons who received at least one telemarketing call "from or on behalf of" Defendant. (*Id.*) Class membership for all three of these classes "depends on whether the person has a valid claim" against UWM under a direct liability theory (for having physically placed the call or sent the text) or vicarious liability theory (under various agency principles). The membership in all three of these proposed classes cannot be defined until the Court finds that the communication was either "initiated" by UWM, so as to support direct liability, or sent "on behalf of" UWM, so as to support vicarious liability. That is a hallmark of a failsafe class. *Young*, 693 F.3d at 538 (class is failsafe where membership in the class "cannot be defined until the case is resolved on its merits"). The Court must either find in favor of plaintiff as to direct liability or agency relationship, or the class members will be excluded. The class allegations must therefore be stricken on this additional basis.[18]

***Proposed Classes Do Not Satisfy Predominance, Superiority, and Ascertainability Requirements***. The proposed classes also fail predominance,

---

[18] *Beck v. Cuyahoga Cnty*., 2022 WL 4363562, at *6 (N.D. Ohio Sept. 16, 2022) (class failsafe where the court's determination on the merits necessarily determines if the member is in the class); *Oom v. Michaels Cos*., 2017 WL 3048540, at *5 (W.D. Mich. July 19, 2017) (class consisting of "anyone who paid for preservation mounting and did not receive preservation mounting" is failsafe because "it includes only the customers that Plaintiffs claim are entitled to relief").

superiority, and ascertainability requirements. *See* Fed. R. Civ. P. 23(a)(2), (b)(3). Rule 23(b)(3) classes must "meet predominance and superiority requirements, that is, 'questions of law or fact common to class members [must] predominate over any questions affecting only individual members' and class treatment must be 'superior to other available methods.'" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc*., 863 F.3d 460, 466 (6th Cir. 2017). A proposed class generally will fail the predominance test when "the legal or factual questions that qualify each class member's case as a genuine controversy," are not "subject to generalized proof, and thus applicable to the class as a whole." *Id*. at 468. In addition, implicit in Rule 23 analysis is the requirement of ascertainability, requiring that a class definition "be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Tarrify Props., LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1106 (6th Cir. 2022); *See also Davis v. City of Detroit*, No. 15-10547, 2018 WL 4179316, at *2 (E.D. Mich. Aug. 31, 2018) (a class action is inappropriate where membership is impossible to identify without individualized mini-trials).

Here, mini trials would be required into the circumstances of each call or text message, including whether a putative member at some point provided her number to UWM, thereafter revoked her consent, and whether a particular caller's relationship with UWM qualified under the principles of direct or vicarious liability.

Due to these individualized issues, the proposed classes fail preponderance, superiority, and ascertainability requirements.[19]

## VI.   CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice or, at a minimum, strike the legally defective class allegations at this stage.

Dated: January 16, 2026                              Respectfully submitted,

**FOLEY & LARDNER LLP**

By: _/s/ Irina Kashcheyeva_
Irina Kashcheyeva (P72575)
Amir El-Aswad (P86092)
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
ikashcheyeva@foley.com
ael-aswad@foley.com
_Counsel for Defendant_

---

[19] _See Taylor v. Cnty. of Oakland_, 2024 WL 188376, at *6 (E.D. Mich. Jan. 16, 2024) (ascertainability, predominance and superiority requirements not met where "mini-trials" would be required to determine whether foreclosures resulted in a deprivation of excess equity); _Tarrify Props., LLC_, 37 F.4th at 1105-07 (predominance, superiority and ascertainability requirements not met where individualized fact-finding was needed to determine whether each property had surplus equity); _Hirsch v. USHealth Advisors, LLC_, 337 F.R.D. 118, 132 (N.D. Tex. 2020) (denying class certification for TCPA claims due to questions about whether third parties that placed calls were defendant's agents); _Sandusky,_ 863 F.3d at 468-69 (class certification improper where individualized questions of members' consent to receive fax advertisements prevented common issues from predominating).

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I caused to be electronically filed the foregoing paper with the Clerk of the Court, which will send notification of such filing to all counsel of record via the Court's ECF system.

By: */s/ Irina Kashcheyeva*
Irina Kashcheyeva (P72575)
Amir El-Aswad (P86092)
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
(313) 234-2800
ikashcheyeva@foley.com
ael-aswad@foley.com
*Counsel for Defendant United*
*Wholesale Mortgage, LLC*