UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW JAMES MCGONIGLE and
JOSHUA HESTER, individually and on
behalf of all similarly situated,

Plaintiffs,

v.

UNITED WHOLESALE MORTGAGE, LLC,

Defendant.

Case No. 25-cv-13865
Hon. Susan K. DeClercq
Mag. Kimberly G. Altman

**ORAL ARGUMENT
REQUESTED**

---

**REPLY IN SUPPORT OF UNITED WHOLESALE MORTGAGE, LLC'S
MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.    OPPOSITION DOES NOT OFFER FACTS SUGGESTING AGENCY. ......................................................................................1

II.    TEXT MESSAGES ARE NOT ACTIONABLE UNDER § 227(C)(5). ....................................................................................5

III.   THE CLASS ALLEGATIONS ARE FAIL-SAFE. ............................7

ii

# TABLE OF AUTHORITIES

## Cases

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018)............................................................2

*Alexander v. Sandoval*,
532 U.S. 275 (2001)................................................................................6, 7

*Anderson v. Int'l Union, United Plant Guard Workers*,
370 F.3d 542 (6th Cir. 2004) ....................................................................4

*Bruce v. Adams & Reese, LLP,*
168 F.4th 367 (6th Cir. 2026) ................................................................6, 7

*Callier v. Wide Merch. Inv., Inc.*,
671 F. Supp. 3d 736 (W.D. Tex. 2023) ............................................................2

*Canary v. Youngevity Int'l, Inc.*,
2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) .................................................2, 4

*Cunningham v. Kondaur Cap.*,
2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014)..................................................2

*Davis v. Mut. Life Ins. Co.*,
6 F.3d 367 (6th Cir. 1993) ....................................................................5

*DeClements v. RE/MAX LLC*,
2020 WL 9259326 (D. Colo. Oct. 13, 2020).....................................................4

*Gulfside Casino P'ship v. Churchill Downs Inc.*,
861 F. App'x 39 (6th Cir. 2021) ...............................................................1

*Irvin v. Sonic Indus. Servs.*,
2026 WL 1098403 (N.D. Ga. Apr. 20, 2026)....................................................6

*Keating v. Peterson's Nelnet, LLC*,
615 F. App'x 365 (6th Cir. 2015) ..............................................................1, 3

*Kern v. VIP Travel Servs.*,
  2017 WL 1905868 (W.D. Mich. May 10, 2017) ....................................................1

*Loper Bright. Smith v. State Farm Mut. Auto. Ins. Co.*,
  30 F. Supp. 3d 765 (N.D. Ill. 2014) ................................................................5, 7

*Toney v. Quality Res., Inc.*,
  75 F. Supp. 3d 727 (N.D. Ill. 2014) ....................................................................5

*Usanovic v. Americana, L.L.C.*,
  775 F. Supp. 3d 1133 (D. Nev. 2025) ..................................................................4

## Statutes

47 U.S.C. § 227 ....................................................................................... 5, 6, 7

iv

## I.    OPPOSITION DOES NOT OFFER FACTS SUGGESTING AGENCY.

***Opposition Fails To Address The Broker Agreement***. Plaintiffs concede that, without discovery, they cannot allege UWM directly made the calls, defeating any direct-liability claim. (Opp. at 11 n.1; FAC ¶ 25.) Plaintiffs cling to vicarious liability, but they entirely ignore UWM's arguments based on the Broker Agreement. The Agreement makes clear that:

a) Brokers who called Plaintiffs are independent third parties, who agree they are not UWM's agents, cannot use UWM's name in marketing, and cannot hold themselves out as UWM's agents (Broker Agr. ¶¶ 6.04, 7.04, 7.11);

b) Brokers are ***not required*** to solicit any clients, make any calls, send any texts, or generate any business for UWM whatsoever; with the exception of two companies, brokers can give business to UWM's competitors (*id.* at ¶¶ 7.03, 3.03(x)); but to the extent brokers choose to solicit clients or generate business for UWM, they must comply with all applicable laws (*id.* at ¶ 3.03(a)).

The Broker Agreement, which undisputedly controls UWM's relationship with its broker clients and is referenced in the FAC (Mot. at 7 & n.5), trumps the FAC's contradictory descriptions. *Gulfside Casino P'ship v. Churchill Downs Inc.*, 861 F. App'x 39, 42-44 (6th Cir. 2021). Under its plain terms and prevailing case law, brokers could not have reasonably believed UWM authorized the solicitations.[1]

---

[1] Mot. at 15-16; *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 372 (6th Cir. 2015) (where contract designates parties as independent contractors without authority to make representations on defendant's behalf, such "contractual language flies directly in the face of the classic definition of common-law agency"); *Kern v. VIP Travel Servs.*, 2017 WL 1905868, at *6 (W.D. Mich. May 10, 2017) (TCPA vicarious liability claim dismissed where contract characterized the caller as independent contractor, free to choose how to perform its work, and required

1

Plaintiffs' plea for a "low bar" (Opp. at 9) does not excuse the FAC's deficiencies. Plaintiffs, who spoke with the callers and were in a position to gather more facts (FAC ¶¶ 87, 89, 90, 92), must offer plausible facts showing one of the three forms of agency. Courts routinely dismiss cases where plaintiffs fail to plead such facts in support of one of the three forms of agency.[2] In light of the Broker Agreement, the FAC does not and cannot support any theory of agency.

***UWM Training & Tools Do Not Establish Control.*** Plaintiffs cite FAC ¶¶ 9-31 for broad allegations about UWM's training, tools, marketing materials, scripts, compliance guidance, brokers' self-identification as "UWM Partners" and their promotion of UWM loan products. (Opp. at 11-12.) But these allegations describe services UWM makes available to its broker clients, not control over clients' solicitations or their day-to-day actions. The Broker Agreement does not require

---

compliance with applicable law); *Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 745 (W.D. Tex. 2023) (vicarious liability claim dismissed because contract identified caller as independent marketing/referral agent and prohibited use of defendant's logo or trade name); *Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *7 (N.D. Cal. Mar. 20, 2019) (TCPA claims dismissed where defendant's policies classified distributors as independent contractors and stated defendant did not control their selling methods, hours, or effort).

[2] *See* Mot. at 13 (citing *Selou* and *Usanovic*); *Cunningham v. Kondaur Cap.*, 2014 WL 8335868, at *7-8 (M.D. Tenn. Nov. 19, 2014) (dismissing TCPA claims against mortgage company because plaintiff did not adequately allege that defendant controlled marketers, authorized their texts, represented they were defendant's agents, or knowingly accepted benefits of their calls); *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *5-6 (N.D. Cal. Jan. 4, 2018) (callers' use of defendant's name and mark, promotion of its products, and appearance on its website did not establish defendant's control, manifestations, reliance, or agency).

2

brokers to submit any loan applications to UWM, does not require brokers to place any calls for UWM, does not require sending any texts, and UWM requires brokers using "Communication Services" (as defined in the Broker Agreement) to communicate "on behalf of and in the name of the Broker." (*Id.* ¶¶ 7.03, 7.11.)[3]

The tools that UWM allegedly provides to its broker clients do not establish control over the "manner and means" of brokers' solicitations or a power to give "interim instructions," as required for agency. (*See* Mot. at 13-14, citing *Doe*, *Hoffman*, *Kern* and *Rahaman*); *Keating*, 615 F. App'x at 367, 373. While the FAC alleges UWM's control over the loan origination process for those loans brokered to UWM—underwriting, rate locking, closing approval, and funding (FAC ¶¶ 22, 29)—it notably does not allege UWM's control over how or when brokers communicate with borrowers or UWM's power to provide interim instructions regarding the same. Plaintiffs' own allegations confirm that UWM's involvement pertains to loan processing and underwriting, not communications. (FAC ¶¶ 10-13, 21-33.) Since the Broker Agreement releases brokers from the duty to make any loans for UWM, UWM cannot have the power to control brokers' communications.

Plaintiffs' reliance on *Dish Network* and the FCC's 2013 ruling (Opp. at 8-12) is misplaced because both presuppose operational control that the FAC does not

---

[3] Since brokers who communicated with Plaintiffs did not do so in their own names, this suggests that these brokers did not use UWM Communication Services.

allege. Plaintiffs identify no UWM-mandated script or dialer, no UWM selection of Plaintiffs' numbers, no UWM control over call timing or volume, no monitoring of the calls, and no instruction to contact Plaintiffs. Cases in franchise and other similar contexts are clear that training and technology do not equate to control over calls.[4]

*Apparent Authority & Ratification Theories Fail.* Plaintiffs' apparent authority theory fails because such authority must be based on **UWM's manifestations to Plaintiffs**, and **Plaintiffs must have relied on them**. *Anderson v. Int'l Union, United Plant Guard Workers*, 370 F.3d 542, 551 (6th Cir. 2004). Neither the FAC nor the Opposition identifies any statement or act by UWM directed at Plaintiffs. Rather, the Opposition confirms reliance on brokers' statements (such as that brokers are "UWM Partner[s]." (Opp. at 12, 14.) The referenced tools and training are broker-facing, and Plaintiffs also do not dispute they never saw or relied on any UWM manifestations before receiving the communications. (Opp. at 14). This defeats apparent authority. Mot. at 16-18; *Usanovic*, 775 F. Supp. 3d at 1140 (no apparent authority where plaintiff did not rely on defendant's statements).

While Plaintiffs invoke examples from the FCC's 2013 ruling (Opp. at 13),

---

[4] *Canary*, 2019 WL 1275343, at *6-8 (training does not equate to authority; "granting permission to perform telemarketing does not mean that [defendant] exercised control over the entity that made the call"); *DeClements v. RE/MAX LLC*, 2020 WL 9259326, at *3 (D. Colo. Oct. 13, 2020) (encouraging franchisees to call prospects and use calling services does not amount to control over calls); *Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133, 1140 (D. Nev. 2025) (trainings on how to make calls & where to purchase numbers/dialers do not establish actual authority).

the FAC does not allege that UWM approved the script used with Plaintiffs, allowed these callers to use UWM's name (which the Broker Agreement prohibits), used UWM's communication platforms, or identified any UWM-facing representation seen by either Plaintiff. And to the extent the FCC's guidance expands federal common law agency principles, courts have refused to defer to it, even before *Loper Bright*. *Smith v. State Farm Mut. Auto. Ins. Co*., 30 F. Supp. 3d 765, 779 (N.D. Ill. 2014) (dismissing TCPA claims, noting that "neither the FCC nor Plaintiffs" have a persuasive reason to depart from "established principles of federal agency law").

Ratification fares no better. Plaintiffs continue to allege that UWM "knew or should have known" that some brokers violated the TCPA, failed to stop them, and benefited from resulting applications. (Opp. at 14; FAC ¶¶ 23-24.) But general benefits are insufficient; plaintiffs must allege acceptance of benefits from the particular calls at issue. *Toney v. Quality Res., Inc*., 75 F. Supp. 3d 727, 745–46 (N.D. Ill. 2014); Mot. at 19-20. Ratification requires acceptance of a particular "transaction" with knowledge of the material facts. *Davis v. Mut. Life Ins. Co*., 6 F.3d 367, 374 (6th Cir. 1993). Plaintiffs did not obtain a UWM loan or other benefit, making ratification implausible. Plaintiffs also fail to address UWM's argument that ratification is affirmatively negated by the Broker Agreement. (Mot. at 20-21.)

## II.   TEXT MESSAGES ARE NOT ACTIONABLE UNDER § 227(C)(5).

Contrary to Plaintiffs' arguments (Opp. at 15-27), § 227(c)(5) creates a right

5

of action only for "telephone call[s]." 47 U.S.C. § 227(c)(5). It does not say "message" or "solicitation." Plaintiffs ask the Court to extend "telephone call" to any electronic outreach, but *McLaughlin* and *Loper Bright* prohibit such reading.

As Plaintiffs concede (Opp. at 15, 21), statutory meaning is fixed at enactment. Plaintiffs also concede that text messaging did not exist in 1991. Thus, "telephone call" could not have included text messages then. Plaintiffs' "vehicles in the park" analogy (Opp. at 21) fails because "vehicle" is a broad category, while "telephone call" describes a specific act distinct from texting. Congress chose a narrow term, and the Court must apply it as written. The growing post-*McLaughlin* authority follows this analysis, including *five* cases involving Plaintiffs' counsel. Mot. at 23 n.11 (*Fashion Nova*, *Shein*, *1800-Flowers, & Kendo*); *Irvin v. Sonic Indus. Servs.*, 2026 WL 1098403, at *3-5 (N.D. Ga. Apr. 20, 2026).

Plaintiffs emphasize § 227(a)(4)'s definition of "telephone solicitation" as a "telephone call or message." (Opp. at 18-20.) But Congress knew how to say "call or message" when it wanted to; yet it used only "telephone call[s]" in § 227(c)(5). Courts must give effect to that difference. *Bruce v. Adams & Reese, LLP,* 168 F.4th 367, 383 (6th Cir. 2026). While the FCC may regulate "telephone solicitations" under § 227(c)(1), only Congress can create a private right of action, and it limited § 227(c)(5) to "telephone call[s]." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

Plaintiffs' cases are not persuasive. *Satterfield*, *Keating*, and *Ashland Hospital*

6

addressed § 227(b)(1)(A)'s broad "any call" language and relied on FCC deference that *McLaughlin* prohibits. *Medvidi, Mujahid*, and *Skopos* conflate § 227(c)(5)'s "telephone call" with other subsections or rest on FCC guidance that cannot survive the "best reading" standard. *Loper Bright*, 603 U.S. at 400. Plaintiffs' reliance on Congress's 2018 amendment confirms that Congress used "text message" in § 227(e) but left § 227(c)(5) unchanged. *See Bruce*, 168 F.4th at 383. And Plaintiffs' argument the 2003 and 2023 FCC guidance deserve "substantial respect" (Opp. at 26) is foreclosed by *McLaughlin* and *Loper Bright*. Regardless, the 2003 Order addressed § 227(b)'s "any call," not § 227(c)(5)'s "telephone call," and agencies cannot expand Congressionally-created rights of action. *Sandoval*, 532 U.S. at 286.[5]

## III.     THE CLASS ALLEGATIONS ARE FAIL-SAFE.

Plaintiffs urge the Court to delay, but fail to propose a cure for the obvious fail-safe defect. Regardless of objective criteria in other parts of the definition (which were also present in other cases where classes were stricken as failsafe, *see, e.g., Boyer*), membership still turns on whether calls/texts are sent "on behalf of UWM." Courts strike class allegations that are failsafe. (Mot. at 10-11, 28-30.)

---

[5] Similarly, § 227(c) protects "residential telephone subscribers" and residential telephone lines—not cell phones, which Congress regulated in § 227(b). Because Plaintiffs allege only calls to cell phones, their claims fail. (*See* Mot. at 26-28, citing *Sunshine Consulting*, *Mims*, *Kapp*, *Gaker*, *Iniguez,* and *Polti*).

Dated: May 26, 2026

Respectfully submitted,

**FOLEY & LARDNER LLP**


By:  */s/ Irina Kashcheyeva*
Irina Kashcheyeva (P72575)
Amir El-Aswad (P86092)
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
ikashcheyeva@foley.com
ael-aswad@foley.com
*Counsel for Defendant*

8

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I caused to be electronically filed the foregoing paper with the Clerk of the Court, which will send notification of such filing to all counsel of record via the Court's ECF system.

By: */s/ Irina Kashcheyeva*
Irina Kashcheyeva (P72575)
Amir El-Aswad (P86092)
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
(313) 234-2800
ikashcheyeva@foley.com
ael-aswad@foley.com
*Counsel for Defendant United*
*Wholesale Mortgage, LLC*