# EXHIBIT A

2026 WL 2673068
Only the Westlaw citation is currently available.
United States District Court, M.D. North Carolina.

SHAWN CARD, Plaintiff,
v.
R.J. REYNOLDS TOBACCO HOLDINGS, INC., Defendant.

1:26-CV-433
|
Filed 09/03/2026

**Attorneys and Law Firms**

Anthony I. Paronich, Paronich Law, P.C., Hingham, MA, Karl S. Gwaltney, Maginnis Howard Law, Raleigh, NC, for Plaintiff.

John F. Morrow Jr., Womble Bond Dickinson (US) LLP, Winston-Salem, NC, Genevieve R. Walser-Jolly, Womble Bond Dickinson (US) LLP, Irvine, CA, Samuel Melamed, Tomio B. Narita, Womble Bond Dickinson (US) LLP, San Francisco, CA, for Defendant.

**ORDER**

***1** The plaintiff, Shawn Card, alleges that he received multiple unwanted telemarketing text messages from the defendant, R.J. Reynolds Tobacco Holdings, Inc.,[1] from February to April 2026. Mr. Card brings this action on behalf of himself and a putative class of similarly situated individuals, contending that these messages violated the Telephone Consumer Protection Act's prohibition on telephone solicitations to numbers on the National Do Not Call Registry. Reynolds' motion to dismiss will be granted because the TCPA does not create a private cause of action based on unwanted text messages.

**I. Facts as Alleged**

Mr. Card owns and uses a cellular telephone number, (XXX) 516-XXXX. Doc. 1 at ¶ 17. He uses this telephone number for personal, residential, and household purposes, and he was located in this District when he received all of the text messages at issue. *Id.* at ¶¶ 18–19. Mr. Card listed his telephone number on the National Do-Not-Call Registry in 2025. *Id.* at ¶ 21. He has never been a customer of Reynolds and never consented to receive telemarketing text messages from Reynolds. *Id.* at ¶ 22. Despite this, Reynolds sent repeated telemarketing text messages to Mr. Card's cellular telephone number, including from February to April, 2026. *Id.* at ¶ 23. These "messages contained promotional content, including advertisements, discounts, and sweepstakes, all designed to increase consumer engagement and product sales." *Id.* at ¶ 25.

**II. The TCPA**

The TCPA creates a private right of action for an individual "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Congress passed the TCPA, including this private right of action, in 1991 "to address 'the proliferation of intrusive, nuisance calls' to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (quoting § 2, ¶¶ 1, 6, 105 Stat. 2394, note following 47 U.S.C. § 227).

**III. The Text Message v. Telephone Call Distinction**

Reynolds contends that Mr. Card's claim under the TCPA must be dismissed because § 227(c)(5) does not apply to text messages. Doc. 7 at 1.[2] The Fourth Circuit has not decided the issue presented, but the Seventh Circuit recently held in *Steidinger v. Blackstone Medical Services*, that text messages "do not fall within the private right of action created by § 227(c)(5)." 182 F.4th 532, 540 (7th Cir. 2026). The Court finds the reasoning in *Steidinger* persuasive and agrees.

***2** The plain text of § 227(c)(5) references a "telephone call" and not a "text message." The context of this provision also supports limiting its reach to telephone calls. Congress used broader language explicitly encompassing text messages in other subsections of the TCPA. *E.g.*, § 227(a)(4) (defining "telephone solicitation" as "telephone call or message"); § 227(c)(1), (c)(3) (providing for regulation of "telephone solicitations"); § 227(e)(8)(B) (defining "caller identification service" to include services identifying the origin of "a text message"). This demonstrates that Congress intended "telephone call" in § 227(c)(5) to have a narrower scope. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022) (noting that where a statute "has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea") (cleaned up).

Before the decision in *Steidinger*, most courts presumed without deciding that the § 227(c)(5) applied to text messages, based largely on the recognition that the FCC had interpreted the statute in this manner since 2003. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (citing *In re Rules and Regs. Implementing the Tel. Cons. Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003)). But *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025), changed the standard for judicial deference to agency statutory interpretation and called into question such decisions relying on the FCC's interpretation. *See Steidinger*, 182 F.4th at 538.[3]

Most of Mr. Card's contentions as to why text message are covered by § 227(c)(5) were persuasively rejected by the court in *Steidinger*. And Mr. Card's grounds for challenging its reasoning are already addressed in large part by *Steidinger* itself. *Compare* Doc. 15 at 23–24, *with* 182 F.4th at 535–39.

Mr. Card maintains that *Steidinger* "misread the 1991 definition on which it relied." Doc. 15 at 23. Under this 1991 definition, "call" meant "to get or try to get into communication by telephone." Doc. 15 at 23; *see* 182 F.4th at 536. As such, he concludes, a "text message is a 'call' because it is a form of communication between telephones." Doc. 15 at 23. This conclusion isolates the word "call," however, without taking into account that the statutory language at issue is a "telephone call." § 227(c)(5). And, in 1991, a "telephone call" could not have meant a "text message," because a "telephone was an instrument for reproducing sounds" not sending text messages. *Steidinger*, 182 F.4th at 535–36.

Mr. Card asserts that *Steidinger* failed to account for the fact that § 227(c)(5)(C)'s provision of an affirmative defense also "turns on procedures to prevent 'telephone solicitations,' confirming the paragraph enforces subsection (c)'s solicitation rules generally." Doc. 15 at 23; *see* § 227(c)(1)–(5). But the difference in language in the prohibition and the affirmative defense supports distinguishing "telephone calls" from "telephone solicitations." *See, e.g.*, *Richards v. Shein Dist. Corp.*, No. 25-CV-1385, 2026 WL 847584, at *3 (S.D. Ind. Mar. 26, 2026) (noting "§ 227(c)'s use of 'telephone call' to describe a right of action but 'telephone solicitations' to describe an affirmative defense" is a basis for narrowly construing "telephone call"); *see also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 657 (4th Cir. 2019) ("We assume that Congress chooses its words carefully and does not lightly toss around broad language when more precise language is available." (cleaned up)).

***3** Mr. Card urges the Court to follow the reasoning of district courts that have held that "telephone call" under § 227(c)(5) encompasses text messages. *See, e.g.*, Doc. 15 at 15–17. Those decisions are not as persuasive as *Steidinger*. For example, one district court noted that "had Congress intended to eliminate textual communications from § 227(c)(5) it would have used the phrase 'voice call,' rather than 'telephone call.' " *Taha v. Momentive Software, Inc.*, No. 8:25-CV-2330, 2026 WL 974297, at *3 (C.D. Cal. Mar. 11, 2026). But, as the court in *Steidinger* noted, the inverse is also true; if it had been the intent to include all types of communications, Congress more simply could have used the broader term "call" as it did in § 227(b), rather than "telephone call" as it did in § 227(c)(5). 182 F.4th at 539; *see, e.g.*, § 227(b)(1)(A).

### IV. Conclusion

Because "telephone call" under § 227(c)(5) of the TCPA does not include text messages, Mr. Card fails to state a claim. The motion to dismiss must be granted.

It is **ORDERED** that the defendant's motion to dismiss, Doc. 7, is **GRANTED**, and the plaintiff's action will be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Judgment will be entered separately.

This the 3rd day of September, 2026.

### All Citations

Slip Copy, 2026 WL 2673068

Footnotes

1 Reynolds notes in its memorandum in support of the motion to dismiss that it is "not the properly named defendant," but it acknowledges that the Court must accept as true the allegations of the Complaint. Doc. 8 at 8 n.1. For purposes of the present motion, the Court uses the shorthand "Reynolds" to refer to the defendant.

2 Reynolds also contends § 227(c)(5) does not apply to cell-phone subscribers like Mr. Card because they do not qualify as "residential telephone" subscribers. Doc. 8 at 19–28. Because the Court agrees with Reynolds that § 227(c)(5) does not encompass text messages, the Court does not reach this alternative basis for dismissal.

3 After *McLaughlin*, district courts have split over whether § 227(c)(5) applies to text messages. *Compare, e.g.*, *Mey v. Liberty Home Guard, LLC*, No. 23-CV-281, 2026 WL 486556, at *7 (N.D.W. Va. Jan. 5, 2026) (concluding "a text message is a call within the ambit of the TCPA"), *and* *Alvarez v. Fiesta Nissan, Inc.*, No. 25-CV-343, 2026 WL 202930, at *4 (S.D. Tex. Jan. 26, 2026) (same), *with* *Radvansky v. 1-800-Flowers.com, Inc.*, No. 25-CV-2811, 2026 WL 456919, at *5 (N.D. Ga. Feb. 17, 2026) (concluding that "the phrase 'telephone call' in 47 U.S.C. § 227(c)(5) does not encompass text messages"), *and* *Richards v. Fashion Nova, LLC*, No. 25-CV-1145, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026) (same).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.